IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| DANIEL ANTHONY LUCAS, : <br> : <br> Petitioner : <br> : <br> vs. : <br> : <br> STEPHEN UPTON, Warden, : <br> : <br> Respondent : <br> _____ : | 5:09-CV-289 (CAR) |

# **ORDER**

Petitioner has filed a Motion for Appointment of Counsel pursuant to the provisions in 18 U.S.C. § 3599.

## **I.  PROCEDURAL HISTORY**

Petitioner has a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 pending in this Court.  According to his federal habeas corpus petition, Petitioner is a prisoner in the custody of the State of Georgia pursuant to a judgment and sentence entered September 16 and 17, 1999.  Petitioner was convicted of three counts of malice murder, two counts of burglary, one count of kidnaping with bodily injury, and he was sentenced to death.

Petitioner appealed and the Supreme Court of Georgia affirmed his conviction and sentence of death on November 19, 2001.  ***Lucas v. State***, 274 Ga. 640  (2001).  Petitioner filed a motion for reconsideration that was denied on December 14, 2001.

Petitioner filed a Petition for Writ of Certiorari in the United States Supreme Court and the Court denied the Petition on October 7, 2002.  ***Lucas v. Georgia***, 537 U.S. 840 (2002).  The Court denied Petitioner's motion for rehearing on December 2, 2002.  ***Lucas v. Georgia***, 537 U.S. 1068 (2002).

On August 13, 2003, Petitioner filed a habeas corpus action in the Butts County Superior Court that challenged his conviction and sentence. Petitioner filed an amended petition on March 1, 2007. The court conducted a three day evidentiary hearing starting on July 9, 2007. The state habeas court denied relief on all claims on June 4, 2008.

Petitioner filed an Application for Certificate of Probable Cause to Appeal in the Supreme Court of Georgia. The Supreme Court of Georgia denied the application on June 29, 2009.

On August 20, 2009, Petitioner filed a Petition for Writ of Habeas Corpus by a Person in State Custody in this Court pursuant to 28 U.S.C. § 2254.

## II.  APPOINTMENT OF COUNSEL

18 U.S.C. § 3599 (a)(2) provides as follows:

> In any post conviction proceeding under section 2254 or 2255 of Title 28, United States Code, seeking to vacate or set aside a death sentence, any defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services shall be entitled to the appointment of one or more attorneys and the furnishing of such other services in accordance with subsection (b) through (f).

18 U.S.C. § 3599 (a)(2). In this case, Petitioner's filings show that he is financially unable to obtain adequate representation. Under these circumstances, Petitioner is entitled to appointment of counsel under 18 U.S.C. § 3599 (a)(2).

Having concluded that Petitioner is entitled to appointment of counsel, the Court must next determine whether 18 U.S.C. § 3599 permits it to appoint Petitioner's requested counsel–David C. Blickenstaff and Lisa Carey-Davis. Because of the seriousness of the death penalty and the unique and complex nature of this kind of litigation, counsel must have a certain level of experience before being eligible for appointment under § 3599. For post-judgment appointments, as in this case, "at least one attorney so appointed must have been admitted to practice in the court of appeals for not less than five years, and must have had not less than three years experience in the handling of

2

appeals in that court in felony cases." 18 U.S.C. § 3599 (c). Based on the information provided in the Motion for Appointment of Counsel, it does not appear that Mr. Blickenstaff or Ms. Carey-Davis meet these qualifications.

However, 18 U.S.C. § 3599 (d) provides that "the court, for good cause, may appoint another attorney whose background, knowledge, or experience would otherwise enable him or her to properly represent the defendant, with due consideration to the seriousness of the possible penalty and to the unique and complex nature of the litigation." ***Id***., *see In re Lindsey*, 875 F.2d 1502, 1507 n.3 (11th Cir. 1989)(explaining that "[t]he use of the words 'another attorney' suggests that the court may appoint an attorney *in lieu of* one meeting the statutory requirements, rather than an attorney in addition to the one meeting the standards").

Mr. Blickenstaff, a partner with Schiff Hardin located in Chicago, Illinois, has practiced law since 1994 and "has been admitted to practice before the United States Supreme Court, the Courts of Appeals for the Third, Fifth, Seventh, and Federal Circuits, the District Courts of the Northern and Central District of Illionis, and the Illinois state courts." (R. at 14, p. 3). Moreover, he is familiar with the facts and procedural history of Petitioner's case because he served as lead attorney for Petitioner "in the habeas corpus proceedings since early 2007," and "has spent more than 1000 hours working on [Petitioner's] case." (R. at 14, p. 3). At the state habeas level, Mr. Blickenstaff "led the six-lawyer trial team that represented [Petitioner] at the July 2007 evidentiary hearing." (R. at 14, p. 3).

Ms. Carey-Davis, formerly a staff law clerk for the Seventh Circuit, is currently an associate with Schiff Hardin, who "was admitted to the Illinois bar in 2006 and is admitted to practice before the Seventh Circuit and the Northern District of Illinois." (R. at 14, p. 3). "While in law school, [she] represented clients at trial and post-conviction proceedings as a provisionally licensed attorney

through the Center on Wrongful Convictions at Northwestern University School of Law." (R. at 14, p. 3). Moreover, she "has represented [Petitioner] since 2008 and has extensive knowledge of his case." (R. at 14, p. 4).

The Court finds that it would be difficult for Petitioner to find other counsel to represent him at this stage in the litigation, especially in light of his indigency, and that it would take "any new counsel an enormous amount of time and effort to learn what Mr. Blickenstaff and Ms. Carey-Davis already know about [Petitioner's] case." (R. at 14, p. 4). Moreover, given counsels' experience and their familiarity with Petitioner's case, the Court finds that they will be able to properly represent Petitioner. Therefore, Petitioner's Motion for Appointment of Counsel is **GRANTED** and counsel–David C. Blickenstaff and Lisa Carey-Davis are appointed to represent Petitioner in his federal habeas corpus action.[1]

The next issue that must be determined is the rate at which counsel will be compensated. It appears that the Administrative Office of the United States Courts has approved $175.00 an hour, for both in-court and out-of-court time. Therefore, the Court finds that it is appropriate to compensate both attorneys at a rate of $175.00 per hour.

Counsel is reminded that they may obtain investigative, expert, or other services that are reasonably necessary for his representation of Petitioner; but they must obtain prior approval from the Court for such services. 18 U.S.C. § 3599 (f). *Ex parte* requests for payment of fees and expenses under § 3599 (f) may not be considered unless Petitioner makes a proper showing of the need for confidentiality. *Id*. Fees and expenses for such services are limited to $7,500.00 unless

---

[1] The Court notes that four additional attorneys were originally shown as counsel for Petitioner. While these attorneys may continue to represent Petitioner, the Court has not appointed them pursuant to 18 U.S.C. § 3599 and the Court will not compensate these additional attorneys for time spent working on this habeas corpus action; nor will the Court provide reimbursement for their expenditure of fees and expenses.

the Court certifies that a larger amount is necessary and the Chief Judge of the Eleventh Circuit approves the larger amount.  *See* 18 U.S.C § 3599 (g) (2),

The following procedures for interim payments and reimbursement of expenses shall apply during the course of this case:

    A.    <u>Submission of Vouchers</u>

Counsel shall submit to the Clerk's Office in Macon, Georgia, once every month, an interim voucher on CJA Form 30, "Death Penalty Proceedings: Appointment of and Authority to Pay Court Appointed Counsel."  Compensation earned and reimbursable fees and expenses incurred for each calendar month shall be claimed on an interim voucher submitted no later than the fifth day of each subsequent month, or the first business day thereafter if the fifth day of the month is a Saturday, Sunday, or holiday.  Each interim voucher shall be numbered sequentially and shall include the time period covered.  Interim vouchers shall be submitted in accordance with this schedule and procedure even if little or no compensation, fees, or expenses are claimed for the time period covered.  All interim vouchers shall be supported by detailed and itemized statements of time expended and fees and expenses incurred.

After an interim voucher is submitted to the Clerk's Office in Macon, Georgia, the Deputy Clerk assigned to this case will submit it to the Court for approval.  The Court will then review the voucher, particularly the amount of time claimed, and will authorize compensation for the approved number of hours and for all reimbursable fees and expenses reasonably incurred.  The Court will endeavor to review and act on each voucher within 30 days of submission.

At the conclusion of the representation, counsel shall submit a final voucher for payment of time expended and fees and expenses incurred during the final interim time period.  The final voucher shall also set forth in detail, with supporting documentation, the time expended and fees and

expenses incurred for the entire case. The final voucher shall also reflect all compensation and reimbursement previously received on the appropriate line of the form.

      B.      <u>Reimbursable Out-of-Pocket Expenses</u>

Counsel may be reimbursed for out-of-pocket expenses (not including fees or expenses relating to investigative, expert, or other services that are reasonably necessary for the representation) reasonably incurred during the representation. Although neither § 3599 nor the applicable rules and regulations limit the amount of out-of-pocket expenses that may be incurred, counsel should not incur a single out-of-pocket expense in excess of $500.00 without prior approval of the Court. Approval may be sought by filing an *ex parte* application with the Court stating (1) the nature of the expense, (2) the estimated cost, and (3) the reason the expense is necessary to the representation. Recurring out-of-pocket expenses, such as the cost of telephone toll calls, telegrams, photocopies, facsimiles, and photographs, that total more than $500.00 on one or more interim vouchers are not considered single expenses requiring prior approval of the Court.

With respect to travel outside Chicago for the purposes of consulting with Petitioner or his former counsel, interviewing witnesses, etc., the $500.00 rule shall be applied in the following manner: Travel expenses, such as airfare, mileage, parking fees, meals, and lodging, may be claimed as itemized expenses. Therefore, if the total out-of-pocket expenses for a single trip will exceed $500.00, the travel shall require prior approval of the Court.

Case-related travel by privately owned automobile shall be claimed at the rate authorized by the government for business-related travel by federal judiciary employees, plus parking fees, ferry fares, and bridge, road, and tunnel tolls. For information regarding the current mileage rate for federal judiciary employees, counsel should consult the Clerk's Office in Macon, Georgia. Transportation other than by privately owned automobile should be claimed on an actual-expense basis. First-class air travel is prohibited.

Actual expenses incurred for meals and lodging while traveling outside Chicago, Illinois for case-related purposes must conform to the prevailing limitations placed upon travel and subsistence expenses for federal judiciary employees in accordance with existing government travel regulations. For information regarding per diem rates for federal judiciary employees, as well as for specific details concerning high-cost areas, counsel should consult the Clerk's Office in Macon, Georgia.

The cost of telephone toll calls, telegrams, photocopies, facsimiles, and photographs may be reimbursable out-of-pocket expenses if they are reasonably incurred. However, general office overhead (such as rent, secretarial assistance, and telephone service) is not reimbursable; nor are items of a personal nature.

Finally, expenses for service of subpoenas on fact witnesses are not reimbursable out-of-pocket expenses and should not be included on any voucher. Instead, such expenses will be paid by the United States Marshals Service, but only upon prior approval by the Court. Approval may be sought by filing an *ex parte* application with the Court. Payment of such expenses shall be governed by 28 U.S.C. § 1825.

SO ORDERED, this 24th day of November, 2009.

S/ C. Ashley Royal
C. ASHLEY ROYAL, JUDGE
UNITED STATES DISTRICT COURT

lnb