IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| DANIEL ANTHONY LUCAS, | : | |
| Petitioner | : | |
| VS. | : | CIVIL ACTION NO.: 5:09-CV-289 (CAR) |
| STEPHEN UPTON, Warden, | : | |
| Respondent | : | |

## ORDER

Pursuant to the Consent Scheduling Order (R. at 10, 11), the parties have submitted briefs addressing the procedural defenses raised by Respondent's Answer-Response to Amended Petition for Writ of Habeas Corpus (R. at 19).

## I. EXHAUSTION AND PROCEDURAL DEFAULT

"Exhaustion requires that 'state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process'." **Mason v. Allen**, 605 F.3d 1114, 1119 (11th Cir. 2010)(quoting **O'Sullivan v. Boerckel**, 526 U.S. 838, 845 (1999). In order to properly exhaust a particular claim, "the petitioner must 'fairly present' [the claim] . . . to the state's highest court, either on direct appeal or on collateral review." **Id.** (quoting **Castille v. Peoples**, 489 U.S. 346, 351 (1989)). This Court cannot review a claim that has not been exhausted in the state courts. *See* **Baldwin v. Reese**, 541 U.S. 27 (2004); **Snowden v. Singletary**, 135 F.3d 732, 736 (11th Cir. 1998); **Putman v. Turpin**, 53 F. Supp. 2d 1285, 1292 (M.D. Ga. 1999), **aff'd**, 268 F.3d 223 (11th Cir. 2001) (explaining that "when it is clear that the unexhausted claims would be barred in state court due to a state law procedural default, federal courts 'can . . . treat those claims now barred by state law as no basis for federal habeas

1

relief'") (quoting *Snowden*, 135 F.2d at 735).

"In the process of exhausting a claim, the petitioner must comply with all 'independent and adequate' state procedures, or else the petitioner will have procedurally defaulted on that claim." *Mason*, 605 F.3d at 1119 (citing *Wainright v. Sykes*, 433 U.S. 72, (1977) and *Bailey v. Nagle*, 172 F.3d 1299 (11th Cir. 1999). The procedural default rule provides that "[f]ederal courts may not review a claim procedurally defaulted under state law if the last state court to review the claim clearly and expressly states that its judgment rests on a procedural bar, and the bar presents an independent and adequate state ground for denying relief." *Hill v. Jones*, 81 F.3d 1015, 1022 (11th Cir. 1996) (citing *Harris v. Reed*, 489 U.S. 255 (1989)). The United States Court of Appeals for the Eleventh Circuit has set forth a three part test to determine whether the state court's procedural ruling constitutes an independent and adequate state rule of decision:

> (1) "the last state court rendering a judgment in the case must clearly and expressly state that it is relying on state procedural rules to resolve the federal claim without reaching the merits of that claim [; (2)] the state court's decision must rest solidly on state law grounds, and may not be 'intertwined with an interpretation of federal law[;]" and (3) the state procedural rule must not be applied in an arbitrary and unprecedented fashion.

*Mason*, 605 F.3d at 1120 (quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)).

## II. EXCUSING PROCEDURAL DEFAULT

If Respondent establishes that a default has occurred, Petitioner bears the burden of establishing that either cause and prejudice or a fundamental miscarriage of justice exists to overcome the default. *Gordon v. Nagle*, 2 F.3d 385, 388 n.4 (11th Cir. 1993). The Eleventh Circuit has explained as follows:

> A petitioner may obtain federal review of a procedurally defaulted claim if he can show both cause for the default and actual prejudice resulting from the default. Additionally, in extraordinary cases, a federal court may grant a habeas petition without a showing of cause and prejudice to correct a fundamental miscarriage of justice.

*Jones v. Campbell*, 436 F.3d 1285, 1304 (11th Cir. 2006) (citations omitted).

A finding of cause "must ordinarily turn on whether the petitioner can show that some

2

objective factor external to the defense impeded counsel's efforts to comply with the procedural rule." ***Putman***, 53 F. Supp. 2d at 1292 (citing ***Murray v. Carrier***, 477 U.S. 478 (1986)). If a petitioner relies on cause to excuse a procedural default, he must also show actual prejudice. Because a petitioner must show both, "a finding by the court that one prong has not been met alleviates the need to analyze the claim under the other prong." ***Id***. In relation to prejudice, the courts have explained that a petitioner "must show that the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness. ***McCoy v. Newsome***, 953 F.2d 1252, 1220 (11th Cir. 1992)(citing ***Carrier***, 477 U.S. at 494).

If a petitioner cannot show both cause and prejudice, a federal court "may consider procedurally defaulted claims only if a failure to do so would result in a fundamental miscarriage of justice." ***Putman***, 53 F. Supp.2d at 1292. Regarding what is necessary in order for a petitioner to succeed on a claim of fundamental miscarriage of justice, the Eleventh Circuit has stated as follows:

> To excuse a default of a guilt-phase claim under [the fundamental miscarriage of justice] standard, a petitioner must prove "a constitutional violation [that] has probably resulted in the conviction of one who is actually innocent." . . . To gain review of a sentencing-phase claim based on manifest injustice, a petitioner must show that "but for constitutional error at his sentencing hearing, no reasonable juror could have found him eligible for the death penalty under [state] law."

***Hill***, 81 F.3d at 1023 (citations omitted).

## III. DEFAULT ISSUES RELATING TO PETITIONER'S SPECIFIC CLAIMS FOR RELIEF

**A. Claim One: The prosecutor withheld exculpatory evidence from Mr. Lucas in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments and *Brady v. Maryland*.**

Petitioner maintains that his intoxication on the day of the crime was an issue during both the guilt and penalty phases of his trial. He claims that on September 7, 2009–the day before jury

3

selection began in his trial–the chief investigator in the case interviewed Tim Bentley. (R. at 26, p. 7). Mr. Bentley was "a witness who had seen a red car speeding away from the crime scene immediately after the crime occurred." (R. at 26, p. 7). Mr. Bentley told the investigator that he had almost slammed into the passenger side of the vehicle, but the passenger had not budged and was unresponsive. (Resp't Ex. 90, p. 161-164). The investigator prepared a four page report of the interview (the "Bentley Report"). (Resp't Ex. 93, p. 246-48). The district attorney subpoenaed Mr. Bentley to testify at Petitioner's trial, but did not call him as a witness. Additionally, it is undisputed that the State did not provide Petitioner's trial attorneys with the Bentley Report and did not disclose the information that Mr. Bentley had provided. Petitioner explains that the Bentley Report did not surface until after the conclusion of the direct appeal, when his habeas counsel made a request pursuant to the Open Record's Act. (R. at 26, p. 9).

Petitioner first presented his *Brady* argument to the state habeas court. The Butts County Superior Court held "that Petitioner's claim that the State failed to disclose a Jones County Sheriff's Office supplemental report of an interview with Tim Bentley prior to trial is procedurally defaulted." (Resp't Ex. 177, p. 6). The state habeas court cited, and relied on, Georgia's procedural default rule as stated in *Black v. Hardin* 255 Ga. 239 (1985):

> [A] failure to make timely objection to *any* alleged error or deficiency or to pursue the same on appeal ordinarily will preclude review by writ of habeas corpus. However, an otherwise valid procedural bar will not preclude a habeas corpus court from considering alleged constitutional errors or deficiencies if there shall be a showing of adequate cause for failure to object or to pursue on appeal *and* a showing of actual prejudice to the accused. Even absent such a showing of cause, the relief of the writ will remain available to avoid a miscarriage of justice where there has been a substantial denial of constitutional rights.

*Black*, 255 Ga. at 240.

The Georgia Supreme Court cited *Strickler v. Greene*, 527 U.S. 263 (1999) for the proposition that "*Brady* claims can be procedurally defaulted." (Resp't Ex. 177, p. 6). In *Strickler*, the petitioner "acknowledge[d] that his *Brady* claim [was] procedurally defaulted" and the Court went on to consider whether "the default was excused by an adequate showing of cause and

4

prejudice." ***Strickler***, 527 U.S. at 282. It appears that Petitioner previously made the same acknowledgment. A review of Petitioner's briefs at the state habeas level shows that Petitioner did not argue that procedural default did not apply to his ***Brady*** claim. Instead he argued that "cause [was] demonstrated . . . because the State concealed the Bentley evidence," and that prejudice was established. (Resp't Ex. 176, p. 3-11). However, Petitioner now argues that his ***Brady*** claim is not procedurally defaulted because "Georgia does not regularly apply the rule that ***Brady*** claims raised for the first time during habeas proceedings are procedurally barred." (R. at 26, p. 10).

"[A] state court's rejection of a petitioner's constitutional claim on state procedural grounds will only preclude federal habeas review if the state procedural ruling rests upon 'independent and adequate' state ground." ***Judd v. Haley***, 250 F.3d 1308, 1313 (11th Cir. 2001) (quoting ***Coleman v. Thompson***, 501 U.S. 722, 729-30 (1991) and ***Harris v. Reed***, 489 U.S. 255, 262 (1989)). To determine whether the habeas court's determination "constitutes an independent and adequate state rule of decision," the Court applies the three-part test established in ***Card v. Dugger***, 911 F.2d 1494 (11th Cir. 1990). ***See Judd***, 250 F.3d at 1313. Neither party disputes that the first two elements of this test are met: (1) the state habeas court "clearly and expressly state[d] that it [was] relying on state procedural rules to resolve the [***Brady*** claim] without reaching the merits of that claim"; and (2) "the state court's decision . . . rest[s] solidly on state law grounds," and is not "'intertwined with an interpretation of federal law'." ***Judd***, 150 F.3d at 1313 (quoting ***Card***, 911 F.2d at 1516-17).

Petitioner maintains that the state court's procedural ruling in this case does not pass the third part of the test–it is not "adequate"; meaning that it is not firmly established and regularly followed and was "applied in an arbitrary or unprecedented fashion." ***Judd***, 250 F.3d at 1313. To support this claim, Petitioner cites four cases: ***Nelson v. Zant***, 261 Ga. 358 (1991); ***Zant v. Moon***, 264 Ga. 93 (1994); ***Head v. Stripling***, 277 Ga. 403 (2003); and ***Brownlow v. Schofield***, 277 Ga. 237 (2003). According to Petitioner, in each of these cases, "the ***Brady*** claim was not discovered until after direct appeal; and the Georgia Supreme Court considered the merits of the ***Brady*** claim without discussing . . . that these claims were procedurally defaulted or that the petitioners needed to show

5

cause and prejudice." (R. at 26, p. 12).

Two of these cases–*Nelson* and *Moon*– were decided years before the United States Supreme Court explained in *Strickler* that "*Brady* claims can be procedurally defaulted." (Resp't Ex. 177, p. 6). Therefore, the fact that the Georgia Supreme Court did not find these petitioners' *Brady* claims procedurally defaulted before 1999 does not establish that it arbitrarily found the *Brady* claim in the present case to be procedurally defaulted.

In *Stripling*, the Georgia Supreme Court did not discuss procedural default at length. However, when explaining why procedural default did not bar the habeas court's consideration of the *Brady* claim, the Georgia Supreme Court cited a case that "explain[ed] [the] cause and prejudice test for overcoming procedural default." *Stripling*, 277 Ga. at 407 (citing *Turpin v. Todd*, 268 Ga. 820 (1997) ).

In the fourth case cited by Petitioner, *Brownlow*, the Georgia Supreme Court did not mention procedural default at all. It appears that the court granted Brownlow's application for a certificate of probable cause to appeal and posed one particular question: "In a habeas corpus case wherein the petition relies on *Brady* . . . , is the habeas court authorized to deny relief where the prosecutor failed to disclose evidence which is favorable to the defense, but which is weaker than similar exculpatory evidence which was admitted at trial?" *Brownlow*, 277 Ga. at 238. The Georgia Supreme Court addressed this one issue. It is unclear from the opinion if the respondent even raised the procedural default defense at the state habeas corpus level.[1]

Respondent cites four cases for the proposition that Georgia regularly applies procedural default defenses to *Brady* claims: *Upton v. Parks*, 284 Ga. 254 (2008); *Walker v. Johnson*, 282 Ga. 168 (2007)*; Schofield v. Medders*, 280 Ga. 865 (2006); and *Waldrip v. Head*, 279 Ga. 826 (2005). In *Upton*, the Georgia Supreme Court explained that "[b]ecause [the petitioner] did not pursue his

---

[1]In contrast, in the current case, Respondent, at the state habeas level, did assert that Petitioner's *Brady* claim was procedurally defaulted (Resp't Ex. 174, p, 6, 252-62) and Petitioner never maintained that procedural default could not apply to his *Brady* claim. Instead, he asserted that he could show cause and prejudice to overcome the default. (Resp't Ex. 176, p 3-11).

6

*Brady* claim until habeas proceedings, the initial question is whether [he] can establish sufficient cause and prejudice to overcome his procedural default." *Upton*, 284 Ga. at 255. Likewise, in *Walker*, *Schofield*, and *Waldrip*, the Georgia Supreme Court addressed whether the petitioners' various *Brady* claims had been procedurally defaulted. *Walker*, 282 Ga. at 169; *Schofield*, 280 Ga. at 869, and *Waldrip*, 270 Ga. at 832. In addition to these four cases, this Court has located additional cases in which the Georgia Supreme Court applied the procedural default rule to various *Brady* claims. *See Schofield v. Palmer*, 279 Ga. 848, 851 (2005) (explaining that there was withheld evidence not discovered until after direct appeal and claim raised for the first time at state habeas, but petitioner able to "show cause and prejudice to excuse the procedural default"); *Whatley v Terry,* 284 Ga. 555, 558-59 (2008)(explaining that when the State conceals evidence during trial and direct appeal, and, therefore, petitioner does not raise a *Brady* claim until at the state habeas level, the habeas court is correct in finding, "at least as an initial matter" that the claim is barred by procedural default but the petitioner can overcome the bar by showing cause and prejudice).

Given its review the of the Georgia case law, the Court finds that the Georgia Supreme Court does regularly apply the procedural default rule to *Brady* claims first made at the state habeas level. Petitioner complains that the application of the procedural default rule in this context will allow "[t]he State [to] suppress exculpatory evidence and then later assert procedural default to shield its own misconduct." (R. at 26, p. 7). This, however, is not the case because the underlying *Brady* claim and the cause and prejudice analysis necessary to overcome procedural default are coextensive. The United States Supreme Court has explained as follows:

> *Brady*, we reiterate, held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." . . . [T]he three components or essential elements of a *Brady* prosecutorial misconduct claim [are]: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." "[C]ause and prejudice" in this case "parallel two of the three components of the alleged *Brady* violation itself." Corresponding to the second *Brady* component (evidence suppressed by the State), a petitioner shows

7

"cause" when the reason for his failure to develop facts in state-court proceedings was the State's suppression of the relevant evidence; coincident with the third *Brady* component (prejudice), prejudice within the compass of the "cause and prejudice" requirement exists when the suppressed evidence is "material" for *Brady* purposes. . . . Thus, if [a petitioner] succeeds in demonstrating "cause and prejudice," he will at the same time succeed in establishing the elements of his . . . *Brady* . . . claim.

*Banks v. Dretke*, 540 U.S. 668, 691 (2004) (citations omitted); *See also Walker*, 282 Ga. at 169 and *Palmer*, 279 Ga. at 851 (explaining that the elements of the underlying *Brady* claim and the prejudice analysis necessary to satisfy the cause-and-prejudice test to overcome procedural default are identical).

In this case, Petitioner has shown cause, and in doing so he has established the second element of his *Brady* claim–that the "evidence [was] suppressed by the State." *Banks*, 540 U.S. at 691. The prosecutor in Petitioner's trial explained that they had "an open file policy" and would give defense counsel "whatever [came] into the State's possession." (Resp't Ex. 4, p. 17). There is no dispute that the prosecutor did not provide the Bentley Report to the defense. It was not until Petitioner filed his state habeas action that habeas counsel obtained a copy of the Bentley Report pursuant to a request made under the Open Records Act.

The next issues is whether Petitioner has shown prejudice. As explained above, if Petitioner establishes prejudice, he will also have established the "materiality" prong of his *Brady* claim. The state habeas court found that Petitioner had "failed to establish the prejudice prong to overcome the procedural default of this claim." (Resp't Ex. 177, p. 9). Specifically, the court found as follows:

> Mr. Bentley's "report" does not offer evidence of Petitioner's level of intoxication. Taken in context with the other witnesses, who had direct contact and knowledge of Petitioner's actions on the day of the murders and who testified about Petitioner's intoxication and behavior on the day of the murders, the report of Mr. Bentley's statement is cumulative, at best, and not "material."
> 
> Viewed in conjunction with Petitioner's confession and statements and the extensive testimony of multiple witnesses who either witnessed the vehicle leaving the scene of the murders or those knowledgeable of Petitioner's drug and alcohol abuse on the day of the crime, this Court finds that this document and the testimony of Mr. Bentley would not, in reasonable probability, have changed the outcome of the suppression hearing concerning Petitioner's confession or either phase of Petitioner's trial.
> 
> This Court concludes that there is no reasonable probability that the outcome

> of Petitioner's trial would have been different; and that Petitioner has thus failed to
> establish the prejudice prong to overcome procedural default of this claim.

(Resp't Ex. 177, p. 8-9).

After a thorough review of the record, this Court agrees with the state habeas court. There was extensive testimony regarding Petitioner's drug use on the day of the murders. For example, the jury heard that Petitioner had smoked marijuana the night before the murders and on the day of the murders he consumed an unknown quantity of cheap red wine, an unknown quantity of Darvocet, and he had taken six to ten Xanax just hours before the murders. (Resp't Ex. 20, p. 349; Resp't Ex. 21, p. 92; Resp't Ex. 22, p. 14). Petitioner's friends testified that when they saw him after the murders, he was completely "messed up" or "tore down" and was obviously intoxicated from either alcohol or drugs. (Resp't Ex. 21, p. 53-58, 89). They testified that he was swaying as he walked, or walked "like he'd been drinking all day," and that his speech was slurred. (Resp't Ex. 20, p. 241; Resp't Ex. 21, p. 90, 362).

Dr. John Cusak, an expert in psychiatry with a special expertise in the effects of drugs and alcohol, testified that the drugs and alcohol that Petitioner consumed on the day of the murder would imperil and jeopardize his mental functioning to the point that "it would be difficult [for Petitioner] to be able to coordinate the making of a sandwich." (Resp't Ex. 22, p. 15). Dr. Cusak explained that the Petitioner would not "have been able to logically plan out [his] thoughts on the day of the murders and that his reasoning and rationale capabilities were "severely" impaired. (Resp't Ex. 22, p. 22, 31).

The September 7, 1999 Bentley Report merely shows that a on the day of the murders, a red car pulled in front of Mr. Bentley's vehicle and he was forced to "slam on his brakes behind the car." (Resp't Ex. 93, p. 248). The "car left very quickly in front of him" but he noticed the driver was "dark headed and kept turning his head back and forth as if looking for traffic and the passenger was light headed and . . . had slumped down so the driver could see." (Resp't Ex. 93, p. 248).

9

Years later, on February 15, 2007, Mr. Bentley provided an affidavit in which he asserted:

> The passenger had light hair. His head was propped back with his eyes facing forward, and was resting his arm out the window. He was able to hold his head up, and looked forward the entire time. He never tried to move out of the line of vision of the driver, even though the driver was doing all he could to see around the passenger. He never looked towards the truck, and did not move at all in anticipation of an accident when my truck almost collided into the passenger side of the car. The passenger appeared to be totally out of it. I would describe him as comatose.

(Resp't Ex. 93, p. 24).

However, during the state habeas corpus evidentiary hearing, Mr. Bentley explained that the word "comatose" was suggested to him by Petitioner's investigator or attorney. (Resp't Ex. 90, p. 172-175). He explained that the passenger was "just sitting there" and he never saw him move. (Resp't Ex. 90, p. 180). Mr Bentley could provide no information beyond what he observed in this brief encounter. At best, this evidence was cumulative of both the lay and expert testimony presented regarding Petitioner's drug usage on the day of the murders. As such, "[P]etitioner has not shown that there is a reasonable probability that his conviction or sentence would have been different had [the Bentley Report] been disclosed. He cannot therefore show materiality under *Brady* or prejudice from his failure to raise the claim earlier." *Strickler*, 527 U.S. at 296.

**B. Claim Seven: The service of a juror who was not mentally competent on Mr. Lucas's jury violated his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments.**

Petitioner claims that the service of mentally incompetent juror Gerelean Lowe Carter violated his right to a fair trial. The state habeas court held this claim was procedurally defaulted. The state court also found that Petitioner had not established cause and prejudice or a fundamental miscarriage of justice to overcome the default.

The state court first found that the type of evidence that Petitioner submitted to support his allegation of juror incompetence, the affidavits of Gerelean Carter's two children, was not allowed under Georgia Law. The court explained as follows:

> Petitioner submitted affidavits of the juror's, (Mr. Carter's) two children,

> Juanita Inman and Aaron Carter in support of this claim. The Court finds that this type of evidence is not allowed under Georgia law as it is being offered to impeach the jury's verdict.
>
> Exceptions are made to the rule in cases where extrajudicial and prejudicial information has been brought to the jury's attention improperly, or where non-jurors have interfered with the jury's deliberations. This is not the case before this Court. Also, precedent generally concern jurors impeaching their own verdicts. Here, the affidavits of the juror's children are an attempt to impeach a juror's verdict; however, the actual juror herself could not do this without running afoul of O.C.G.A. § 9-10-9 and O.C.G.A. § 17-9-41, and thus, by extension, this Court finds that a family member cannot attempt to do that which the juror herself is prohibited from doing. Thus, this Court finds Petitioner has failed to carry his burden of establishing cause and prejudice sufficient to overcome his procedural default.

(Resp't Ex. 177, p. 9-10).

Petitioner maintains that "[t]he state habeas court's treatment of affidavits submitted by Carter's children was . . . unreasonable." (R. at 24, p. 19). Petitioner states that O.C.G.A. § 17-9-41 applies only to "affidavits of jurors" and should not be extended to include affidavits of family members because the exclusion of such affidavits does not serve the purpose of the statute, which is "'prohibit[ing] after-the-fact picking at the negotiating positions of the jurors and their attempts to persuade one another'." (R. at 24, p. 19)(*quoting **Hall v. State***, 259 Ga. 412, 415 (1989)). However, there are other purposes behind the rule that are promoted by the exclusion of these affidavits; such as the goal of "enhanc[ing] verdict finality and certainty." ***Spencer v. State***, 260 Ga. 640, 643 (1990).

However, this Court need not address whether the state habeas court should have excluded the affidavits, because that Court found that even if the affidavits were admissible, Petitioner still had failed to establish cause and prejudice to overcome his default. (Respt. Ex. 177, p. 10). The state habeas court held that Petitioner had not presented "'clear evidence of a juror's incompetence to understand the issues and to deliberate at the time of her service' in order to have a jury verdict set aside." (Resp't Ex. 177, p. 10)(quoting ***Jefferson v. Terry***, 490 F. Supp.2d 1261, 1297 (N. D.

Ga. 2007)).[2] The court found as follows:

> This Court finds that Petitioner has not presented "clear evidence" that Ms. Carter was incompetent and unable to deliberate at the time of Petitioner's trail. Instead, the Court notes that there is no concrete evidence in the record or even from these affiants that Ms. Carter has been diagnosed with any type of dementia, past or present.
> Although Petitioner cites to Ms. Carter's voir dire as support for his claim, this Court finds that this colloquy does not establish "clear evidence" that Ms. Carter was incompetent at the time of Petitioner's trial. Further, the Court notes that the evidence shows that eight years after Petitioner's trial, Ms. Carter still lives independently. Most significantly, there is nothing in the record, from Ms. Carter or any other juror deliberating in Petitioner's case, that in any way indicates that Ms. Carter experienced mental confusion or trouble concentrating or deliberating during the trial.
> Thus this Court alternatively finds that Petitioner has failed to establish that trial counsel were deficient in any manner in not seeking to excuse Ms. Carter during Petitioner's trial or that Petitioner was in any way prejudiced as he has failed to show that Ms. Carter was incompetent during Petitioner's trial. Accordingly, Petitioner has failed to establish ineffective assistance of counsel to overcome his default of this claim.

(Resp't Ex. 177, 10-11)

This Court must presume these "factual findings to be correct unless the [P]etitioner rebuts the presumption by clear and convincing evidence." ***Ward v. Hall***, 592 F3d 1144, 1177 (11th Cir. 2010). "Clear and convincing evidence entails proof that a claim is 'highly probable,' a standard requiring more than a preponderance of the evidence but less than proof beyond a reasonable doubt." ***Id.*** (quoting ***United States v. Owens***, 854 F.2d 432, 436 n.8 (11th Cir. 1998). Petitioner has not made such a showing. This Court agrees with the state habeas court's factual findings. Petitioner has not shown cause and prejudice to overcome the default. Petitioner has not shown that counsel was ineffective and prejudice resulted from their failure to have Ms. Carter removed from the jury

---

[2]It does not appear that either the United States Supreme Court or the Eleventh Circuit Court of Appeals has ruled on the showing that a petitioner must make in order to establish that his due process right to a competent jury has been violated. In ***Jefferson***, the United States District Court for the Northern District of Georgia, adopted the standard used in the First, Second, and Fourth Circuits that require a petitioner to show "clear evidence of a juror's incompetence to understand the issues and to deliberate at the time of his service." ***Jefferson***, 490 F. Supp.2d at 1297 (citing ***United States v. Hall***, 989 F.2d 711 (4th Cir. 1993); ***United States v. Dioguardi***, 492 F.2d 70 (2nd Cir. 1974); and ***United States v. Vargas***, 606 F.2d 341 (1st Cir. 1979). The Eleventh Circuit did not address this issue on appeal in ***Jefferso***n when it reversed ***Jefferson*** on other grounds. ***Jefferson v. Terry***, 570 F.3d 1284 (2009).

or in failing to raise the issue on appeal. Petitioner presented no evidence that Ms. Carter had ever been diagnosed with any type of dementia or any mental illness whatsoever. A statement from an investigator that Ms. Carter "did not seem to be all there in the head" does not establish that this juror was incompetent. (Resp't Ex. 98, p. 1891). This is especially true in light of the record that showed Ms. Carter was still living alone and independently almost seven years after the trial. (Resp't Ex. 93, p. 30-31, 66).

**C. Claim Eight: Errors in the charge to the jury and the verdict form violated Mr. Lucas's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments and *Apprendi v. New Jersey*.**

Petitioner claims that the verdict form did not make it clear that the jury had to agree unanimously on any aggravating circumstances. Respondent asserts that the state habeas court correctly found this claim, which is part of Claim Eight in the federal habeas petition, to be procedurally defaulted because it was not raised on direct appeal.

A review of the record in this case shows that Claim XVIII in Petitioner's brief on direct appeal to the Georgia Supreme Court was that "[t]he penalty phase instructions were erroneous, confusing, and misleading." (Resp't Ex. 29, p. 126). Subsection "C" read as follows: "The Trial Court's Penalty Phase Charge Improperly Implied That the Jury was Required to Reach Unanimity on Mitigating Circumstances Before Considering Them and Failed to Instruct the Jury That it Was Required to Reach Unanimity Regarding All Aggravating Circumstances." (Resp't Ex. 29, p. 131). A review of the argument reveals that Petitioner alleged "there was no specific instruction that the jury had to agree unanimously on each aggravating circumstance before determining Mr. Lucas's punishment." (Resp't Ex. 29, p. 132). However, Petitioner does not mention the verdict form anywhere in this Claim. The Georgia Supreme Court held that "[w]e find no merit in Lucas's contentions regarding the sentencing phase jury charges given in trial." *Lucas v. State*, 274 Ga. 640, 649 (2001).

Later, when the case was pending before the state habeas court, Petitioner again asserted in

Claim X that "the sentencing jury instructions in the case were ambiguous, insufficient, vague, and confusing" and "the sentencers . . . were not given an instruction that indicated that their decision on the existence of aggravating factors had to be unanimous." (Resp't Ex. 84, p. 41). In a separate claim, Claim XII, Petitioner mentioned, **for the first time**, the verdict form. Specifically, he alleged that "[t]he verdict forms utilized at the penalty phase of Petitioner's trial were fatally vague and deprived Petitioner of his rights in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution." (Resp't Ex. 84, p. 44). Petitioner claimed that "[t]hese verdict forms fail to demonstrate that any aggravating circumstance was found unanimously by the jury beyond a reasonable doubt." (Resp't Ex. 84, p. 48). Petitioner even stated in a footnote that "[t]o the extent Appellate Counsel failed to raise and litigate the issue on direct appeal, Appellate Counsel was ineffective. Petitioner was actually prejudiced and harmed because of this failure." (Resp't Ex. 84, p. 49, n.41).

At the state habeas level Respondent claimed, as he does now, that the court was barred from reviewing Petitioner's claim regarding the verdict form because Petitioner failed to raise the issue on direct appeal. (Resp't Ex. 174, p. 6-10). The state habeas court agreed, found that Petitioner failed to raise the claim on direct appeal, and found that Petitioner failed to establish cause and prejudice, or a miscarriage of justice, sufficient to excuse the procedural default. (Resp't Ex. 177, p. 6).

"Federal courts may not review a claim procedurally defaulted under state law if the last state court to review the claim states clearly and expressly that its judgment rests on a procedural bar, and the bar presents an independent and adequate state ground for denying relief." ***Hill v. Jones***, 81 F.3d 1015, 1022 (11th Cir. 1996). In this case, the last state court to review Petitioner's claim regarding the verdict form clearly stated that the claim was procedurally defaulted. Petitioner failed to show cause and prejudice to overcome the default at the state habeas level and he has failed to show such at this stage in the litigation. Therefore, this Court agrees with the state habeas court and finds the claim is procedurally defaulted.

### D. Claim Nine: Mr. Lucas's death sentence is unconstitutionally disproportionate in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments.

Petitioner states that his claim before this Court is that the "proportionality review as presently conducted by the Georgia Supreme Court (including this case) is 'severely truncated,' 'compromise[s] the constitutionality of the entire sentencing scheme,' and 'result[s] in the arbitrary imposition of the death penalty'." (R. at 26, p. 25). Respondent claims that "[t]he portion of Petitioner's claim which alleges that the Georgia statute is unconstitutional was properly found to be procedurally defaulted." (R. at 21, p. 16).

A review of the record shows that the state habeas court did find Petitioner's claim regarding the constitutionality of the Georgia statutes (O.C.G.A. § 17-10-30 (b) and O.C.G.A. § 16-5-1) was procedurally defaulted. (Resp't Ex. 177, p. 6). However, Petitioner is not currently alleging these statutes are unconstitutional. Instead, he maintains that his claim before this Court "is that the Georgia Supreme Court has not followed the statute and did not follow it in [this] case." (R. at 26, p. 26). The Court finds that this particular claim has not been procedurally defaulted.

Alternatively, Respondent asserts that this claim is unexhausted. However, a review of the record shows that Petitioner clearly raised this claim in the state habeas court. (Resp't Ex. 84, p. 49-56). Therefore, the claim is exhausted.[3]

The Court finds that this particular claim has been exhausted and is not procedurally defaulted.

### D. Claim Eleven: When the errors are taken together, Mr. Lucas is entitled to relief under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

In this Claim, Petitioner asserts that the cumulative effect of various constitutional errors

---

[3]Respondent argues that even if this claim is exhausted and not procedurally defaulted, the federal district court may not review such a claim. The Court is aware that it may not conduct a case by case analysis of the Georgia Supreme Court's proportionality review and that "[t]o do so would thrust the federal judiciary into the substantive policy making area of the state." ***Moore v. Balkcom***, 716 F.2d 1511, 1518 (11th Cir. 1983). A federal court can intervene, and perhaps remand the case to state court, only if a Petitioner shows that "the facts and circumstance of his case are so clearly undeserving of capital punishment that to impose it would be patently unjust and would shock the conscience." ***Id***. This Court's review of this Claim will ultimately be limited to "whether the state sentencing procedure both on its face and as applied violates the eighth and fourteenth amendments." ***Id***. at 1519 n.6.

deprived him of a fair trial. Respondent alleges this claim is not cognizable "under Georgia law" and "does not state a federal question for review by this Court" because "a 'cumulative error' claim as a stand-alone claim does not raise a constitutional claim." (R. at 21, p. 23).

Petitioner, however, claims that "the Eleventh Circuit recognizes cumulative error claims in habeas corpus cases." (R. at 24, p. 1). In *Cargill v. Turpin*, 120 F.3d 1366 (11th Cir. 1997), the Eleventh Circuit Court of Appeals denied a "cumulative effect" claim because petitioner's trial was not "rendered fundamentally unfair." In another pre-Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") case, *Conklin v. Schofield*, 366 F.3d 1191, 1210 (11th Cir. 2004), the Eleventh Circuit Court of Appeals explained that "'[a] piecemeal review of each incident does not end our inquiry. We must consider the cumulative effect of these incidents and determine whether, viewing the trial as a whole, appellants received a fair trial as is their due under the Constitution'" *Id*. at 1210 (quoting *United States v. Blasco*, 702 F.2d 1315 (11th Cir. 1983).

Petitioner has not cited, and the Court has not found, any post-AEDPA cases from the Eleventh Circuit Court of Appeals in which the Court conducted a "cumulative error" analysis. District Courts, citing *Conklin*, continue, post-AEDPA, to analyze the cumulative effect of various alleged constitutional errors. *See Gary v. Schofield*, 336 F. Supp. 2d 1337, 1382-83 (M. D. Ga. 2004); *Evans v. Sec'y, Dep't of Corr*., No. 6:07-CV-897-Orl-28KRS, 2010 U.S. Dist. LEXIS 108652 at *123 (M. D. Fla. September 29, 2010); *Hammack v. McNeil*, No. 5:07CV142/RS/EMT, 2010 U. S. Dist. LEXIS 58574 at *81-*87 n.21 (N. D. Fla., May 25, 2010)(noting that "[t]he law in other circuit courts of appeals is mixed on the issue of whether a claim of 'cumulative effort' or 'cumulative error' is cognizable on federal habeas"); *Ross v. McNeil*, No. 5:07CV219/RS/EMT, 2010 U. S. Dist. LEXIS 53139 at *129-*136 (N. D. Fla. April 14, 2010). Keeping in mind the deferential review required by AEDPA, this Court will follow the dictates of *Conklin* and consider Petitioner's claims collectively to determine if Petitioner's "trial, as a whole, ws fundamentally unfair and outside the bounds of the Constitution." *Conklin,* 366 F.3d at 1210.

Respondent also asserts that the Court should find that the crime scene video portion of

16

Petitioner's cumulative error claim was procedurally defaulted. However, the last state court to review the claim did not "clearly and expressly state[] that its judgment rests on a procedural bar, and the bar presents an independent and adequate state ground for denying relief." *Hill v. Jones*, 81 F.3d 1015, 1022 (11th Cir. 1996) (citing *Harris v. Reed*, 489 U.S. 255 (1989)). Instead, the state habeas court clearly held the claim was res judicata. (Resp't Ex. p. 177, p. 2). A finding of res judicata does not procedurally bar this Court from considering a claim. *Owens v. Sec'y for the Dep't of Corr.*, 568 F.3d 894 (11th Cir. 2009)(citing *Cone v. Bell*, 129 S. Ct. 1769 (2009)).

## IV. CONCLUSION

For reasons set forth above, the Court finds that it is precluded from reviewing the following: (1) Claim One; (2) Claim Seven; and (3) the portion of Claim Eight relating to the jury verdict form. Conversely, Claims Nine and Eleven are not procedurally defaulted.

**SO ORDERED**, this 12th day of April, 2011.

S/ C. Ashley Royal
C. ASHLEY ROYAL, JUDGE
UNITED STATES DISTRICT COURT

lnb