IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| DANIEL ANTHONY LUCAS, | : | |
| | : | |
| Petitioner | : | |
| | : | |
| vs. | : | CIVIL ACTION NO: 5:09-CV-289 (CAR) |
| | : | |
| STEPHEN UPTON, Warden, | : | |
| | : | |
| Respondent | : | |

**ORDER**

Pending before the Court is Petitioner **DANIEL ANTHONY LUCAS'S** Motion to Supplement the Record and to Clarify September 28, 2011 Order.  (ECF No. 37).

### I. SUPPLEMENTING THE RECORD PURSUANT TO RULE 7 OF THE RULES GOVERNING SECTION 2254 CASES

Lucas seeks to supplement the record with the publicly available mental health records of his co-defendant, Brandon Rhode.1  Both Lucas's trial attorneys as well as attorneys for the State made pretrial requests for Rhode's Central State Hospital Records.  (Resp't Ex. 1 at 365-70; Resp't Ex. 20 at 390-91).  Lucas's trial attorneys sought these records because of the possibility that they would contain exculpatory or mitigating evidence that would support Lucas's defense at trial.  (Resp't Ex. 1 at 365-70).  The trial court initially granted Lucas's

---

1 Rhodes was admitted to Central State Hospital after he attempted suicide while awaiting trial for the Moss Murders.   He spent five weeks at this mental health facility.   (Pet'r Br. at 2, ECF No. 38).

motion, but Central State Hospital objected to the release. The trial court then entered an Order that provided as follows:

> IT IS HEREBY ORDERED THAT pursuant to O.C.G.A. § 37-7-166 (a)(7) that except for matters privileged under the laws of the state, the records of Brandon Rhode be produced to the Court for an in camera inspection and subsequent possible release to defendant's attorneys for use at the trial in this case.

(Resp't Ex. 1 at 538).

Immediately before opening statements at Lucas's trial, the judge explained to the parties that he

> conducted the hearing and they—they are going to turn the records over to [him] and [he is] going to go through the records—there is a right lot of them—to be sure that [he] know[s] what's in those records before [he] makes a determination on what will be released.

(Resp't Ex. 19 at 26).

Apparently the hearing to which the trial judge refers was "conducted in camera, ex parte . . . with only the hospital represented." (Resp't Ex. 29 at 136). There is no transcript of this pretrial hearing in the record.2

At some point later in the trial, the judge informed the parties that he had reviewed Rhode's Central State Hospital records twice. He explained that he "read through this thing . . . in a cursory manner once that took about a half hour and then in a detailed manner that took several hours." (Resp't Ex. 20 at 391). The trial judge stated he found "no exculpatory

---

2 The record in this 28 U.S.C. § 2254 action is voluminous, filling eleven boxes and consisting of thousands of pages. The parties have not cited to any transcript of this hearing and the Court has not located such a transcript.

material" and no material that "would be applicable in any mitigating situation." (Resp't Ex. 20, p. 391). He, therefore, did not give either party the hospital records.

As this record shows, it is difficult, if not impossible, to know exactly what Central State Hospital records the trial court reviewed. However, one can assume the records produced were somewhat voluminous because the judge explained there were "a . . . lot of them" and that it took him "several hours" to review the records.

On direct appeal, Lucas challenged the trial court's refusal to allow him access to Rhode's records. (Resp't Ex. 29 at 135-42). The Georgia Supreme Court held as follows:

> The trial court, after conducting a thorough in camera review, refused to disclose the records of treatment received by Lucas's co-defendant during the co-defendant's incarceration. Lucas argues that the records were not prepared in the course of voluntary treatment and thus were not subject to the psychiatrist-patient privilege. However, because our review of the records indicates that they were prepared in the course of treatment, we conclude that the patient-psychiatrist privilege applied to them, regardless of whether that treatment was voluntary. A plurality of this Court has held that "in order to abrogate the psychiatrist-patient privilege, the [criminal] defendant must make a showing of necessity, that is, that the evidence in question is critical to his defense and that substantially similar evidence is not otherwise available to him." Applying that standard, we find that the trial court did not err in failing to disclose portions of the records that reflected psychiatrist-patient communications. Pretermitting the question of whether the trial court erred by failing to disclose any of the remaining portions of the records, we find beyond a reasonable doubt that their disclosure to Lucas would not have affected the outcome of either phase of the trial.

*Luca v. State*, 274 Ga. 640, 645 (2001) (citations omitted).

While it is obvious that the appellate court conducted an independent "review of the records," it is still not exactly clear what Central State Hospital records the Georgia Supreme Court actually reviewed. It appears that the Georgia Supreme Court reviewed "privileged" as well as non-privileged documents. The Court found that "portions" of the records were privileged and that "the trial court did not err in failing to disclose portions of the record that reflected psychiatric-patient communications." *Id*. The Court also found that the trial court did not err by failing to disclose "any of the remaining portions of the record" because such disclosure would not have affected Lucas's trial. *Id.*

Next, Lucas filed a state habeas corpus action. (Resp't Ex. 40, 84). The trial court ordered the clerk to "unseal all sealed proceedings, pleadings, orders, documents and exhibits for access of the habeas corpus court, Defendant/Petitioner and his counsel and Respondent's counsel for the purpose of litigating the allegations in Defendant/Petitioners' state habeas corpus petition." (ECF No. 38-2). Lucas explains that no records from Central State Hospital were included in the unsealed file.3

---

3 Lucas previously thought that the record did contain the Central State Hospital Records that were disclosed to the trial court. In a previous brief requesting discovery, Lucas stated that "the few pages that [Central State Hospital] apparently disclosed to the trial court . . . were mostly arrest reports and documents from the Jones County Jail. Only five pages actually pertained to Rhode's state at [Central State Hospital]." (Pet'r Br. at 7, ECF No. 33). However, upon further inspection of the record, Lucas now states that "this assumption was incorrect." (Pet'r Br. at 4 n.4, ECF No. 38). Lucas explains that these "few pages," which were introduced as exhibits in the state habeas proceedings, were actually designated as coming "From Trial Attorney's File"; not from the trial court's unsealed records. (See Resp't Ex. 90 at 28-35, which shows Respondent's state habeas exhibit #68, designated as Resp't Ex. 130

Respondent correctly asserts that this Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." (Resp't Br. at 2, ECF No. 40); *see Cullen v. Pinholster*, 131 S. Ct. 1388 (2011). Unfortunately, in this case it is unclear exactly what Central State Hospital records were before the trial court and the Georgia Supreme Court. The unsealed state trial court record transmitted to this Court apparently does not contain any records from Central State Hospital. However, the trial court judge specifically stated that Central State Hospital agreed to "turn the records over," that there was "a right lot of them," and it took him "several hours" to review the records. (Resp't Ex. 19 at 26; Resp't Ex. 20 at 391). The Georgia Supreme Court referred to the trial court's review of the records as "thorough" and explained that it also conducted a "review of the records" from Central State Hospital. *Lucas*, 274 Ga. at 645. The Georgia Supreme Court also indicated that the records consisted of both privileged and non-privileged documents.

When "expanding the record to include evidence that was not part of the state record, [the petitioner] must meet the requirements of . . . § 2254 (e)(2)." *Mann v. Moore*, No. 8:02-CV-1439-T-23MAP, 2010 U.S. Dist. LEXIS 125167 at *55 (M. D. Fla. November 10, 2010) (citing *Holland v. Jackson*, 542 U.S. 649 (2004)). However, this does not appear to be a situation in which a habeas petitioner seeks to supplement the record with "'new evidence'" that was not part of the state record. *Ward v. Hall*, 592 F.3d 1144, 1162 (11th Cir. 2010) (quoting *Owens v.*

---

at 11500-11540 in the federal habeas, and Respondent's state habeas exhibit # 138, designated as Resp't Ex. 141 at 14948-14997 in the federal habeas, are "From Trial Attorney's File.").

*Frank*, 394 F.3d 490, 498 (7th Cir. 2005)).   Instead, Lucas has presented support for his claim that the trial court and Georgia Supreme Court reviewed Rhode's Central State Hospital Records and that these records simply were not included in the documents furnished to this Court.

The Eleventh Circuit has explained that district courts err when they make determinations "[w]ithout the benefit of a complete record."  *Thames v. Dugger*, 848 F.2d 149 (11th Cir. 1988); *see also Bundy v. Wainwright*, 808 F.2d 1410, 1415 (11th Cir. 1987) (citing Rule 5 of the Rules Governing Section 2254 Cases and explaining that "[i]f the record is incomplete, the court on its own motion or motion of petitioner may order it completed"); *Stewart v. Erwin*, 503 F.3d 488, 501 (6th Cir. 2007 ) (appellate court remanded to district court so that the "'evidence presented in the State Court proceeding' that formed the basis for the pertinent state court factual findings" could be provided and reviewed).  Furthermore the United States Supreme Court has "emphasized the importance of reviewing capital sentences on a complete record" and held that the Court of Appeals erred when it did not allow the petitioner to supplement the record after he located a transcript of the penalty phase closing arguments.  *Dobbs v. Zant*, 506 U.S. 357, 358 (1993).

Given that Lucas has pointed to testimony in the record showing that the trial court and the Georgia Supreme Court reviewed Rhode's Central State Hospital records and that these

records are not included in the records transmitted to this Court, the Court **GRANTS**[4] Petitioner's motion to expand the record. Furthermore, if a transcript of the pretrial *ex parte* hearing attended only by Central State Hospital counsel and the trial judge exists, the Respondent is **ORDERED** to produce a copy of this transcript. *See* Rule 5 of the Rules Governing Section 2254 Cases advisory committee notes.

## II. 42 U.S.C. § 1983 IS THE PROPER VEHICLE FOR CHALLENGING GEORGIA'S LETHAL INJECTION PROCEDURES.

Lucas requests "the Court clarify its September 28, 2011 Order by confirming that [his] lethal injection claim may proceed to judgment on the merits." (Pet'r Mot. at 1, ECF No. 37). The Court already addressed this issue at length on pages 10-12 of the September 28, 2011 Order. 42 U.S.C. § 1983 is the appropriate avenue to challenge Georgia's lethal injection procedure. "Although the Supreme Court has not explicitly held that habeas corpus is an inappropriate vehicle to bring these types of challenges, the Eleventh Circuit has made clear that habeas actions and § 1983 actions 'are mutually exclusive'." *Gissendaner v. Seabolt*, No. 1:09-CV-69-TWT, 2011 U. S. Dist. LEXIS 50780 at *11 (N. D. Ga. May 12, 2011) (quoting *Hutcherson v. Riley*, 468 F.3d 750, 754 (11th Cir. 2006)). Because a prisoner can bring a claim

---

[4] If, in his brief on the merits, Respondent shows that the state trial court and Georgia Supreme Court did not consider these records, the Court may determine that, pursuant to *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011), it cannot consider Rhode's Central State Hospital records.  However, if such is not shown, the Court will consider these records when it reviews Lucas's claim that he was deprived access to mitigation evidence in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments and *Lockett v. Ohio*, 438 U.S. 586 (1978).

challenging the lethal injection procedures in a § 1983 action, he cannot bring that same claim in a § 2254 action.   *Id.*

### III. CONCLUSION

Based on the above, the Court **GRANTS** Lucas's Motion to supplement the record and **DENIES** his motion to the extent that he requests the Court to "confirm[] that his lethal injection claim may proceed to judgment on the merits."   (Pet'r Mot. at 1; ECF No. 37).

**SO ORDERED**, this 14th day of March, 2012.

S/   C. Ashley Royal
C. ASHLEY ROYAL, JUDGE
UNITED STATES DISTRICT COURT

lnb